THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARRYL FARMER,<br><br>   Plaintiff,<br><br>  v.<br><br>DR. GWENDOLYN MILES and DR. THOMAS,<br><br>   Defendants. | Case No. 10 CV 5055 |

## Defendants' LR 56.1 Statement of Material Facts

Pursuant to LR 56.1(a)(3) of the Rules of the United States District Court for the Northern District of Illinois, defendants, Gwendolyn Miles and Dr. Sheri Thomas ("Dr. Thomas"), provide the following Statement of Material Facts in support of their Motion for Summary Judgment:

**A. The Parties**

1. At the time of the events described in his complaint, plaintiff, Darryl Farmer, was incarcerated in the custody of the Illinois Department of Corrections, housed at the Northern Reception and Classification Center ("NRC"). (Plaintiff's complaint (Compl.) attached as Exhibit A at 2, ¶¶ 6, 7.) (Deposition of Darryl Farmer (Farmer Dep.) attached as Exhibit B at 8:3-7.)

2. Defendant, Dr. Thomas, was employed as a dentist at the NRC at the time of the operative events described in the plaintiff's complaint. (Deposition of Dr. Sheri Lynn Thomas ("Thomas Dep.") attached as Exhibit C at 21:15-17, 23:23-24, 24:3.) (Compl. at 1, ¶ 3.)

3. A Stipulation of Dismissal as to Defendant Miles was filed on May 7, 2013. (Stipulation of Dismissal as to Defendant Miles attached as Exhibit D.)

B.  **Jurisdiction and Venue**

4.  Plaintiff's Complaint purports to state a claim against Dr. Thomas under 42 U.S.C. § 1983, premised on an allegation of deprivation of dental care while incarcerated at the NRC, which is located in the Northern District of Illinois. (Compl. at 1, ¶ 1.) Specifically, plaintiff alleged that Dr. Thomas "did not prescribe any antibiotics and did not refer plaintiff to a dentist" for his dental condition. (Compl. at 2, ¶ 7.) Plaintiff has submitted an expert report of his retained expert witness, which is attached as Exhibit I.

C.  **Historical Background before Dr. Thomas's Involvement**

5.  Before coming to the NRC, Mr. Farmer was in pre-trial detention at the Champaign County Jail in May and June 2009. (Deposition of plaintiff's expert, Jay D. Shulman, DMD (Shulman Dep.) attached as Exhibit E at 42:13-16.) (Compl. at 2, ¶ 5.)

6.  Mr. Farmer first sought dental treatment for his wisdom tooth while in the Champaign County Jail in May 2009. (Farmer Dep. at 6:11-23.) (Compl. at 2, ¶ 5.) Specifically, Mr. Farmer complained of left molar pain. (Shulman Dep. at 42:17-20.)

7.  At various times while in the Champaign County Jail, Mr. Farmer was given penicillin, Bactrim, ibuprofen, naproxen and Orajel in response to his dental complaints. (Farmer Dep. at 7:1-2.) (Shulman Dep. at 42:21-25.) (Compl. at 2, ¶ 5.)

8.  While at the Champaign County Jail, Mr. Farmer filed a grievance in which he stated that he had an abscess that would cause him extreme pain, that his tooth infection could cause him to die if left untreated and asserted that he was being treated with deliberate indifference. (Records of Champaign County Sheriff (CCS) attached as Exhibit G at 3.) (Shulman Dep. at 43:1-7, 43:25, 44:1-3.)

9.  Mr. Farmer underwent a seven-day course of 500 mg oral penicillin from June 12

through June 19, 2009, while in the Champaign County Jail. (CCS at 25.) (Shulman Dep. at 45:2-8.) (Expert Report of Martin LaPidus (LaPidus Report) at 1, which is an attachment to Exhibit F, Declaration of Martin LaPidus.)

10. Six days after his course of penicillin ended, Mr. Farmer came into the NRC on June 25, 2009. (Shulman Dep. at 45:20-24.)

**D.  Farmer's Screening at the NRC on June 25, 2009**

11. Dr. Thomas screened Mr. Farmer upon his entrance to the NRC on June 25, 2009. (Farmer Dep. at 9:5-11.) (Thomas Dep. at 29:15-16, 29:22-23.) This was not a dental examination but rather a brief screening all new inmates go through when processed on intake at NRC. (Thomas Dep. at 10:24, 11:1-5.)

12. At the time of Mr. Farmer's intake screening, Dr. Thomas was working in tandem with another dentist; Dr. Thomas visually examined the inmate's teeth, and the other dentist would review the inmate's dental x-ray. (Thomas Dep. at 25:17-24, 26:1-3, 27:12-17.) (Shulman Dep. at 70:1-7.)

13. Dr. Thomas did not have access to any documentary medical or dental history for Mr. Farmer at the time of his intake screening. (Thomas Dep. at 31:1-21, 36:17-19.)

14. Mr. Farmer expressed to Dr. Thomas only that he had a toothache, and he opened his mouth to show her his tooth. (Farmer Dep. at 9:16-18.) (Thomas Dep. at 30:1-3, 37:12-13.) (Shulman Dep. at 75:14-22.)

15. Dr. Thomas's custom and practice when an inmate presents with dental pain during his intake screening is to ask questions to determine whether there are any signs and symptoms of infection, which may necessitate treatment with antibiotics. (Thomas Dep. at 30:4-8.) The inmate is examined to determine if he has tenderness in the lymph nodes, cellulitis or gross

swelling, and if none of those problems exist, he would just be given pain medication. (Thomas Dep. at 30:8-14.)

16. Mr. Farmer did not present with any acute symptoms for infection at the time of entry into NRC. (Thomas Dep. at 50:5-7.)

17. There is no documentary evidence in this case to indicate that Mr. Farmer informed Dr. Thomas of his recent history of infection and antibiotic use at the Champaign County Jail. (Shulman Dep. at 50:6-11.)

18. When asked to relate what he told Dr. Thomas during his intake screening, Mr. Farmer did not testify that he told Dr. Thomas about his prior infection or the antibiotic treatments at the Champaign County Jail. (Shulman Dep. at 75:23-25, 76:1.)

19. There is no documentary evidence in this case prepared contemporaneously with Mr. Farmer's June 25, 2009, intake screening indicating that he presented outward signs or symptoms of infection. (Shulman Dep. at 66:12-18.)

20. It is possible that Mr. Farmer's toothache pain was less on June 25 than it had been on June 12 given his intervening course of antibiotic treatment, which can assist in the reduction of pain by reducing swelling. (Shulman Dep. at 61:5-13.)

21. As a dentist within the prison system, Dr. Thomas did not have the authority to prescribe narcotics to Mr. Farmer. (Thomas Dep. at 31:22-24, 32:1-4.) She was only allowed by the state to prescribe Motrin or a form of aspirin for inmates. (Thomas Dep. at 32:5-6.) Tylenol may be used as an alternative. (Thomas Dep. at 33:19-20.) The strongest formulation of Motrin allowed in the prison system is 400 mg. (Thomas Dep. at 30:18-19.)

22. Based on Mr. Farmer's complaint of a toothache during his intake screening, Dr. Thomas prescribed 30 tablets of Motrin 400 mg with instructions to take one every four to six hours as

needed for pain. (Records of Illinois Department of Corrections (DOC) attached as Exhibit H at 2.) (Thomas Dep. at 29:15-24, 30:1-3.) (Shulman Dep. at 61:24-25, 62:11-13, 62: 17-23.)

23. Following Mr. Farmer's intake on June 25, 2009, there is no record of Mr. Farmer making any further dental complaints until July 5, 2009. (Shulman Dep. at 85:15-18.)

**E.     Plaintiff's Request to See a Dentist and Appointment with Dr. Thomas**

24. On July 5, 2009, at 9:40 a.m., Mr. Farmer made a complaint of dental pain and was referred for a dental evaluation. (DOC at 6.) (Shulman Dep. at 88:9-15.)

25. There was no documented complaint of swelling or trismus on July 5, 2009. (Shulman Dep. at 89:4-7.)

26. Mr. Farmer was then seen by Dr. Thomas on July 7, 2009, in the NRC one-chair clinic, which is not a full dental office but just used to handle dental emergencies. (DOC at 17.) (Thomas Dep. at 39:20-23.) (Shulman Dep. at 89:11-12.)

27. On July 7, 2009, Mr. Farmer presented with cellulitis and trismus. (DOC at 17.) (Thomas Dep. at 38:14-16.) (Shulman Dep. at 89:13-15.) Trismus is the inability to open the mouth normally, but the presence of the condition does not mean one cannot open his mouth at all. (LaPidus Report at 2.)

28. Dr. Thomas recognized this presentation to be indicative of infection so she prescribed an antibiotic. (Shulman Dep. at 89:16-20.) She also prescribed Tylenol to alleviate Mr. Farmer's pain, referred him for a dental extraction and put him on a soft diet until he could have his tooth extracted. (Thomas Dep. at 38:16-24, 39:1.) (Shulman Dep. at 90:17-25.)

29. The antibiotic prescribed by Dr. Thomas was penicillin VK 500 mg to be taken every six hours. (Thomas Dep. at 38:18-19.) (Shulman Dep. at 89:21-25, 90:1-8.) Thirty tablets were to be dispensed, which would amount to a seven and one-half day supply. (Shulman Dep. at 90:9-

16.)

30.   Mr. Farmer never saw Dr. Thomas again after July 7, 2009. (Shulman Dep. at 96:2-4.)

31.   Mr. Farmer took three penicillin pills on July 7, 2009, per Dr. Thomas's prescription. (DOC at 17.) (Shulman Dep. at 108:13-18.)

**F.   Farmer's Subsequent Treatment**

32.   Mr. Farmer's condition worsened overnight after seeing Dr. Thomas on July 7, 2009. (Thomas Dep. at 55:5-9.) (Shulman Dep. at 96:5-7.)

33.   On July 8, 2009, Mr. Farmer began complaining of swelling in the left jaw and difficulty swallowing. (DOC at 17.) (Shulman Dep. at 96:8-10.) The degree of trismus was worse, and he was barely able to open his mouth. (DOC at 17.) (Shulman Dep. at 111:22-25, 112:1-11.)

34.   Mr. Farmer was then sent to the infirmary and placed on IV antibiotics. (Shulman Dep. at 96:11-13)

35.   Shortly thereafter, Mr. Farmer was sent to the University of Illinois Hospital where he underwent definitive treatment for his infection and had his tooth extracted. (Shulman Dep. at 96:14-18.) He underwent an extraoral incision and drainage procedure with surgical extraction of the problem tooth – tooth #17 – on July 10, 2009. (LaPidus Report at 3.)

36.   Mr. Farmer has had no further problem related to his tooth following its surgical extraction on July 10, 2009. (Farmer Dep. at 19:4-8.)

**G.   Dental Opinions**

37.   There can be non-dental etiologies for a toothache. (Shulman Dep. at 29:22-24.)

38.   Not all instances of odontogenic pain[1] require treatment, significantly affect daily activities, cause chronic and substantial pain, or are likely to worsen without treatment. (Shulman Dep. at 32:13-25.)

---

[1] "Odontogenic pain" is a "fancy name" for "toothache." (Shulman Dep. at 9:13-16.)

39. A complaint of toothache by itself does not indicate infection. (Shulman Dep. at 33:1-3.)

40. Where the need for a dental procedure is recognized, it is appropriate to provide interim management of the pain until the procedure can be performed. (Shulman Dep. at 33:15-19.)

41. Dr. Shulman testified that an acute localized dental infection should be managed without antibiotics. (Shulman Dep. at 33:11-14.) However, where there is evidence of a spreading infection, it would be appropriate to use antibiotic management, which could be either oral or parenteral. (Shulman Dep. at 35:16-20.)

42. When antibiotic management is indicated with a dental infection, the penicillin family is the standard. (Shulman Dep. at 35:21-25, 36:1-2.) For a typical, run-of-the-mill infection that has spread beyond the localized area of the tooth, the typical antibiotic regimen would be oral penicillin 500 mg, three or four times per day, for seven days. (Shulman Dep. at 39:9-25, 40:1.)

43. If a dental infection is treated with antibiotics, the symptoms and outward signs of the infection can diminish as a result of the antibiotic's use. (Shulman Dep. at 40:7-11.) The antibiotic can reduce swelling and pain. (Shulman Dep. at 40:12-13.)

44. Antibiotic use would not clear the dental infection. (Shulman Dep. at 40:16-18.) If antibiotics are stopped and there is no definitive treatment for the source of the infection, the infection could return to its previous state or progress. (Shulman Dep. at 40:19-23.) The definitive treatment would be an extraction or endodontic therapy. (Shulman Dep. at 40:24-25, 41:1-2.)

45. Dr. Shulman is critical of the institutional process of having two dentists perform screening with one examining the inmate's mouth and the other reviewing x-rays. (Shulman Dep. at 70:8-12.) However, he acknowledged that Dr. Thomas did not institute this process. (Shulman Dep. at 70:13-15.)

46. Dr. Shulman is further critical of the institutional screening process in place at the NRC, which would allow only a few hours to process 200 to 300 inmates, believing this to allow insufficient time for an intake screening. (Shulman Dep. at 76:14-24.) However, he acknowledged that Dr. Thomas did not make the decision as to how many inmates were going to be processed in a given time frame. (Shulman Dep. at 77:20-23.)

47. While Dr. Shulman was critical of the time Dr. Thomas spent with Mr. Farmer during his intake screening, he acknowledged that her limited time with Mr. Farmer was the product of time constraints imposed by the institutional process and not because Dr. Thomas was indifferent to Mr. Farmer's pain or wanted to punish him. (Shulman Dep. at 80:9-13, 81:18.)

48. In retrospect, Dr. Shulman believes that Mr. Farmer had an unresolved infection on June 25, 2009. (Shulman Dep. at 81:19-22.) However, he acknowledged that Dr. Thomas may not have realized this at the time of the intake screening on June 25, 2009. (Shulman Dep. at 82:13-17.)

49. Dr. Thomas's prescription of Motrin (ibuprofen) for Mr. Farmer's complaint of toothache on June 25, 2009, apparently provided relief to Mr. Farmer as he made no further complaint of pain for ten days; hence, the level of his toothache-related pain on June 25, 2009, was likely mild. (LaPidus Report at 1.)

50. Dr. Shulman does not believe Dr. Thomas was aggressive enough in responding to Mr. Farmer's presentation on July 7, 2009. (Shulman Dep. at 91:10-13.) However, he acknowledged that Dr. Thomas did order modalities directed toward Mr. Farmer's presenting signs and symptoms on July 7, 2009. (Shulman Dep. at 92:3-6.)

51. Dr. Shulman believes that as a result of not understanding the seriousness of Mr. Farmer's condition on July 7, Dr. Thomas made the decision to prescribe oral antibiotics and

return Mr. Farmer to his housing unit until his extraction appointment rather than sending him to the infirmary. (Shulman Dep. at 92:7-13.) Dr. Shulman nevertheless acknowledged that the oral penicillin prescribed by Dr. Thomas would have "some utility." (Shulman Dep. at 92:19-21.) He further acknowledged that the antibiotic regimen prescribed by Dr. Thomas on July 7, 2009, was "standard" for a dental infection. (Shulman Dep. at 35:21-25, 36:1-2, 90:6, 90:16.)

52. Dr. Shulman opined that the Tylenol prescribed by Dr. Thomas on July 7, 2009, would probably not have made a difference. (Shulman Dep. at 92:22-25, 93:1-3.) However, he acknowledged that it was "marginally better than nothing." (Shulman Dep. at 93:11-12.)

53. Dr. Shulman agrees with Dr. Thomas's conclusion that extraction of Mr. Farmer's tooth was indicated on July 7, 2009. (Shulman Dep. at 95:11-13.)

54. Dr. Shulman opined that Mr. Farmer's tooth had reached the point of decay where it was going to need to be extracted prior to his intake screening at NRC. (Shulman Dep. at 97:24-25, 98:1-16.)

55. Dr. Shulman opined that Mr. Farmer's dental infection started prior to the date of his intake screening on June 25, 2009, by Dr. Thomas at the NRC. (Shulman Dep. at 99:15-18.)

56. Dr. Shulman was unable to opine whether Mr. Farmer's infection had progressed to the point of needing an extraoral incision and drainage procedure by July 7, 2009. (Shulman Dep. at 100:10-17.)

57. In his review of this case, Dr. Shulman saw no evidence that Dr. Thomas had a specific motive or desire to punish Mr. Farmer. (Shulman Dep. at 101:17-20.)

DATED: May 20, 2013 Respectfully submitted,

GWENDOLYN MILES and DR. SHERI THOMAS,

By: /s/ Joel M. Koppenhoefer
One of the Attorneys for Defendants

Michael R. Slovis
Joel M. Koppenhoefer
Cunningham, Meyer & Vedrine, P.C.
One E. Wacker Drive, Suite 2200
Chicago, Illinois 60601
Phone (312) 578-0049
Fax: (312) 578-0247
mslovis@cmvlaw.com
jkoppenhoefer@cmvlaw.com
Attorneys for Defendants