THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARRYL FARMER,<br><br>        Plaintiff,<br><br>    v.<br><br>DR. GWENDOLYN MILES and DR. THOMAS,<br><br>        Defendants. | Case No. 10 CV 5055 |

## Defendants' Response to Plaintiff's Statement of Additional Facts

Pursuant to LR 56.1(a)(3) of the Rules of the United States District Court for the Northern District of Illinois, defendants, Gwendolyn Miles and Dr. Sheri Thomas ("Dr. Thomas"), provide the following Response to plaintiff's Statement of Additional Facts:

1.  Plaintiff arrived at the "Northern Reception Center" ("NRC") of the Illinois Department of Corrections on June 25, 2009 following his conviction of possession of a weapon that had been found in the trunk of his car.

    **RESPONSE:** Admit.

2.  When plaintiff arrived at the NRC, his "mouth was hurting."

    **RESPONSE:** Admit.

3.  [a] As part of the intake procedure to the NRC, plaintiff received an x-ray of his "whole mouth", [b] which he presented to defendant Thomas.

    **RESPONSE:** [a] Admit.

> [b] Disputed. At the time of Mr. Farmer's intake screening, Dr. Thomas was working with another dentist; Dr. Thomas visually examined the inmate's teeth, and the other dentist would review the inmate's dental x-ray. (Thomas Dep. at 25:17-24, 26:1-3, 27:12-17.)

4. Plaintiff spoke with defendant Thomas at intake, and told Dr. Thomas that he had been taking penicillin, but the pills were gone and he needed something for his teeth.

> **RESPONSE:** Objection: The document upon which this statement is based is unsworn, inadmissible as hearsay and not proper evidence for this Court's consideration pursuant to Rule 56(e). *See Pfeil v. Rogers,* 757 F.2d 850, 859 (7th Cir. 1985); *Boyd v. Pork*, No. 01 C 7957, 2003 U.S. Dist. LEXIS 7485, *19 (N.D. Ill., April 30, 2003) (plaintiff's statement in grievance "is unsworn and of no evidentiary value" in consideration of motion for summary judgment). Further, this unsworn statement conflicts with the author's sworn deposition testimony.

5. While being examined by defendant, plaintiff opened his mouth and tried to show her the source of his pain.

> **RESPONSE:** Admit.

6. [a] Defendant Thomas looked in plaintiff's mouth [b] and at his full mouth x-ray, [c] and told him that she could not do anything at that time. [d] Plaintiff asked her "to do something," and Dr. Thomas told plaintiff that she had prescribed "something."

> **RESPONSE**: [a] Admit.
>
> [b] Disputed. At the time of Mr. Farmer's intake screening, Dr. Thomas

was working with another dentist; Dr. Thomas visually examined the inmate's teeth, and the other dentist would review the inmate's dental x-ray.

[c] Admit.

[d] Admit.

7. [a] Dr. Thomas wrote a prescription for Motrin, a nonsteroidal anti-inflammatory drug that contains ibuprofen, [b] which should not be taken by persons, like plaintiff, who have ulcers.

**RESPONSE**: [a] Admit.

[b] Disputed. Mr. Farmer did not tell Dr. Thomas at the time of the prescription that he had any medical issues that would contraindicate ibuprofen despite being asked by Dr. Thomas. (Thomas Dep. at 33:6-11, 33:24, 34:1-2.)

8. Plaintiff did not receive any medication that Thomas prescribed on June 25, 2009.

**RESPONSE:** Unknown but not relevant.

9. The actions of Dr. Thomas during the intake examination on June 25, 2009 were hurried, incomplete, and perfunctory, did not permit her to identify serious oral problems, such as abscesses and malignancies, and were so far below accepted professional standards that they could not have been based on a medical judgment.

**RESPONSE:** Objection: The document upon which this statement is based is unsworn, inadmissible as hearsay and not proper evidence for this Court's consideration pursuant to Rule 56(e). *See Pfeil v. Rogers,* 757 F.2d 850, 859 (7th Cir. 1985). Further, the referenced statement is a legal conclusion and, therefore, inadmissible for this reason as well. *See Good Shepherd Manor Found., Inc., v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003).

10.     Had Dr. Thomas taken the time to ask plaintiff standard questions about his toothache, such as its duration and his previous treatment, she would have realized that plaintiff's toothache was sufficiently serious to warrant prompt treatment and follow-up.

**RESPONSE:** Objection: The document upon which this statement is based is unsworn, inadmissible as hearsay and not proper evidence for this Court's consideration pursuant to Rule 56(e). *See Pfeil v. Rogers,* 757 F.2d 850, 859 (7th Cir. 1985). Further, this unsworn statement amounts to speculation.

11. [a] Plaintiff's condition worsened following his admission to the NRC: [b] after about a week, his mouth "locked up" and he "couldn't even put a straw in it."

**RESPONSE:** [a] Admit.

[b] Disputed. In the referenced deposition testimony, the date Mr. Farmer experienced the referenced symptoms was not described with any specificity. On July 7, 2009, while Mr. Farmer had trismus, he could still open his mouth sufficiently to consume three penicillin pills. (Shulman Dep. at 107:23-25, 108:13-18.) Despite his trismus worsening overnight, Mr. Farmer could still open his mouth the following day – July 8, 2009. (Shulman Dep. at 111:8-15, 112:7-11.)

12.     Dr. Thomas examined plaintiff on July 7, 2009 and observed that plaintiff could not open his mouth.

**RESPONSE:** Disputed. Dr. Thomas observed that Mr. Farmer had the condition of trismus, but the degree was not specified in Dr. Thomas's note or the referenced deposition testimony. On July 7, 2009, while Mr. Farmer had trismus, he could still open

4

his mouth sufficiently to consume three penicillin pills. (Shulman Dep. at 107:23-25, 108:13-18.) Despite his trismus worsening overnight, Mr. Farmer could still open his mouth the following day – July 8, 2009. (Shulman Dep. at 111:8-15, 112:7-11.)

13. When plaintiff saw Dr. Thomas on July 7, 2009, he had been unable to sleep for five days (i.e., since July 2, 2009), and he had been unable to open his mouth for three days (i.e., since July 4, 2009).

**RESPONSE:** Disputed. The referenced deposition testimony refers to information related to "Dr. Fishman" – not Dr. Thomas – and the dates are unclear.

14. Dr. Thomas diagnosed plaintiff's condition as "trismus."

**RESPONSE:** Admit.

15. Trismus "is a sign of deep fascial plane infection that can be one of the most serious infections of the human body that must be treated aggressively and without delay."

**RESPONSE:** Objection: The document upon which this statement is based is unsworn, inadmissible as hearsay and not proper evidence for this Court's consideration pursuant to Rule 56(e). *See Pfeil v. Rogers,* 757 F.2d 850, 859 (7th Cir. 1985).

16. Trismus carries with it "life-threatening complications."

**RESPONSE**: Objection: The document upon which this statement is based is unsworn, inadmissible as hearsay and not proper evidence for this Court's consideration pursuant to Rule 56(e). *See Pfeil v. Rogers,* 757 F.2d 850, 859 (7th Cir. 1985).

17. Recognition of trismus "is imperative, and the patient must be referred to an oral and maxillofacial surgeon or a physician who may have to manage the patient in a hospital setting."

> **RESPONSE:** Objection: The document upon which this statement is based is unsworn, inadmissible as hearsay and not proper evidence for this Court's consideration pursuant to Rule 56(e). *See Pfeil v. Rogers,* 757 F.2d 850, 859 (7th Cir. 1985).

18. "When you have trismus, the red light goes off, and you send them to an oral surgeon ASAP. Likewise, trismus in conjunction with cellulitis is a red flag that starts waving in front of you. Time---time to send the patient out."

> **RESPONSE:** Disputed. Dr. LaPidus opined that it was appropriate for Dr. Thomas to begin treatment for Mr. Farmer's infection with oral penicillin, which is the gold standard for a non-localized dental infection, and, further, that there was "no reason that Mr. Farmer could not take penicillin in his cell orally … [and] [r]eturning Mr. Farmer to his housing unit on July 7, 2009, with oral penicillin, Tylenol and a soft diet while he waited until he could be seen for a dental extraction did not place him at increased risk for harm." (Exh. F.)

19. The actions taken by Dr. Thomas after examining plaintiff on July 7, 2009-precribing an oral antibiotic and a soft diet and allowing plaintiff to return to his housing unit, given his potentially life-threatening condition-"amounted to no treatment at all."

> **RESPONSE:** Disputed. Dr. Shulman admitted that there was "some marginal utility" in Dr. Thomas's prescription of penicillin. (Shulman Dep. at 108:19-25.) Dr. Shulman also admitted that prescribing Tylenol was "marginally better than nothing." (Shulman Dep. at 93:11-12.) Further, Dr. LaPidus opined that Dr. Thomas's care on July 7, 2009, was

"appropriate" and "met the applicable standard of care." (Exh. F.)

20. "Upon making the diagnosis of trismus, Dr. Thomas should have referred Farmer to a controlled medical environment where he could have been monitored by medical staff, started on intravenous antibiotics, and transported to an oral surgeon or a hospital as his condition dictated."

> **RESPONSE:** Objection: The document upon which this statement is based is unsworn, inadmissible as hearsay and not proper evidence for this Court's consideration pursuant to Rule 56(e). *See Pfeil v. Rogers,* 757 F.2d 850, 859 (7th Cir. 1985). Further, Dr. LaPidus opined that it was appropriate for Dr. Thomas to begin treatment for Mr. Farmer's infection with oral penicillin, which is the gold standard for a non-localized dental infection, and, further, that there was "no reason that Mr. Farmer could not take penicillin in his cell orally … [and] [r]eturning Mr. Farmer to his housing unit on July 7, 2009, with oral penicillin, Tylenol and a soft diet while he waited until he could be seen for a dental extraction did not place him at increased risk for harm." (Exh. F.) Additionally, according to Dr. LaPidus, Dr. Thomas's care met the applicable standard of care. (Exh. F.)

21. Plaintiff underwent surgery at the University of Illinois on July 10, 2009. (Plaintiff's Exhibit 2 at 2-3.) The procedure required general anesthesia and intubation. (Plaintiff's Exhibit 2 at 2-3.)

> **RESPONSE:** Admit.

22. Before the surgery, plaintiff "had been carrying this infection around for months."

**RESPONSE:** Admit.

23. The surgery left plaintiff with a lumpy scar on his throat.

    **RESPONSE:** Admit.

DATED: June 24, 2013                    Respectfully submitted,

                                        GWENDOLYN MILES and DR. SHERI THOMAS,


                                        By:   /s/ Joel M. Koppenhoefer
                                              One of the Attorneys for Defendants

Michael R. Slovis
Joel M. Koppenhoefer
Cunningham, Meyer & Vedrine, P.C.
One E. Wacker Drive, Suite 2200
Chicago, Illinois 60601
Phone (312) 578-0049
Fax: (312) 578-0247
mslovis@cmvlaw.com
jkoppenhoefer@cmvlaw.com
Attorneys for Defendants